LOVECCHIO, J.,
Defendant is charged by information filed on November 21,2014 with operating a watercraft under the influence of alcohol, endangering the welfare of children, and related counts.
On July 4,2014 at approximately 10:15 p.m., defendant is alleged to have been operating a motor boat on the *159 West Branch of the Susquehanna River. It is alleged that he was under the influence of alcohol at the time, thus endangering the welfare of two minor children who also were occupants of the boat. Defendant’s BAG is alleged to have been .145%.
Defendant filed an extensive omnibus pretrial motion on January 15,2015. Defendant’s omnibus pretrial motion raises five separate issues. First, defendant contends that there was insufficient probable cause to arrest him. Second, defendant asserts that the HGN results cannot be utilized to establish probable cause. Third, defendant alleges that the portable breath test (PBT) results cannot be utilized to establish probable cause. Fourth and fifth, defendant contends that the Commonwealth cannot utilize either the HGN or PBT results at trial.
In an order dated February 9, 2015, following a conference, the court denied defendant’s second claim with respect to utilizing the HGN results with respect to the probable cause determination. Pursuant to Commonwealth v. Weaver, 76 A.3d 562 (Pa. Super. 2013), aff’d mem., 105 A.3d 656 (Pa. 2014), the court specifically rejected the assertion that law enforcement cannot rely upon the results of an HGN test when assessing probable cause to an arrest.
Defendant’s fourth and fifth claims regarding the admissibility of the HGN and PBT results were also disposed of in the February 9, 2015 order. Defendant’s claims were conceded by the Commonwealth. The Commonwealth will not reference or utilize the HGN or PBT results at trial.
A hearing and argument on defendant’s remaining two claims, consideration of the PBT results for probable *160 cause and the existence of probable cause, was held before the court on March 18, 2015.
Water Conversation Officer (WCO) Anthony Beers of the Pennsylvania Fish and Boat Commission testified on behalf of the Commonwealth. On July 4, 2014, he and WCO Kyler were patrolling the West Branch of the Susquehanna River near the Hiawatha boat dock.
At approximately 10:15 p.m., they were located in the middle of the channel observing boating traffic. It was the Fourth of July. The local fireworks were ending, the boating traffic was abnormally high, there was a high volume of boats, many boats were traveling upstream from the fireworks toward river lots, and the water conditions were choppy with varying size and number of wakes.
WCO Beers observed a small white vessel traveling upstream without the required 360 degree visibility stem light. He approached the boat to further investigate and noticed that there was a “weak stem light.” A flashlight had been fashioned on a pole at the back of the boat. The light contraption, however, did not meet the 360 degree visibility requirement. Accordingly, he initiated a stop of the boat.
WCO Beers identified defendant as the operator. WCO Beers came in close proximity to defendant. WCO Beers noticed the strong odor of an alcoholic beverage coming from defendant. Defendant’s eyes were also red, glassy and bloodshot. Near the stem of the boat, he observed what appeared to be more than one empty aluminum beer can. As well, defendant indicated that he last drank “an hour before.”
Because the water conditions were worsening (very *161 choppy, a lot of wakes, inconsistent wakes, fairly turbulent) and because of the instability of boats in general on the water as well as the presence of passengers on defendant’s boat, WCO Beers decided only to administer an HGN standard field sobriety test.
WCO Beers has extensive training and experience in DUI investigations and the administering of standard field sobriety tests including but not limited to HGN’s and PBT’s. Based upon this extensive training and experience, he is of the opinion that HGN tests are the “most reliable.”
WCO Beers brought defendant aboard his boat to administer the HGN. WCO Beers described the procedure in detail and how the test was administered to defendant. Pre-test questions were asked and answered, general instructions were provided to defendant and the test was administered while both WCO Beers and defendant were seated. According to the results, there were six clues, three on each eye including a lack of smooth pursuit, distinct and sustained nystagmus at the maximum deviation, and the onset of nystagmus prior to 45 degrees.
On cross-examination, WCO Beers agreed that the conditions for administering the HGN were not ideal in light of the water conditions but maintained that the results were nonetheless indicative of impairment.
WCO Beers opined, following the HGN test, that defendant was operating the boat under the influence of alcohol to the extent defendant was incapable of safe operation. He decided then to administer the PBT.
The PBT device was an Aleo-sensor III. This device is an approved pre-arrest breath-testing device as required under 28 Pa. Code §§5.101-5.104 (relating to equipment *162 to determine blood alcohol content under, among others, the Fish and Boat Code). 44 Pa. Bull. 100 (January 4, 2014). The PBT result, .145, verified alcohol consumption. On cross-examination, WCO Beers testified that the PBT device was last calibrated in the spring of 2014. He also testified that the traceability time period as recommended was 20 minutes from the last drink. He testified that he complied with such because defendant indicated that he last drank over an hour ago. He further testified that he utilized the PBT results to determine the presence of alcohol, not necessarily the amount, and he maintained that for these purposes it was quite accurate.
Following the PBT and based upon all of the other observations as testified to by WCO Beers including the HGN results, he placed defendant under arrest for suspicion of DUI.
Defendant argues that, considering all of the circumstances, there was insufficient probable cause to arrest him. He contends that none of the factors relied upon by WCO Beers were reasonably trustworthy. He asserts that there was no evidence of poor operation of the boat or “bad boating”; no evidence of him stumbling, swaying or being unable to walk normally; and no evidence of him slurring his speech or not responding properly to questions. Defendant argues as well that WCO Beers failed to inquire into innocent explanations with respect to his allegedly bloodshot or glassy eyes. Defendant argues that WCO Beers failed to determine how much defendant drank or exactly how long ago. WCO Beers also failed to determine the exact number of empty cans or how much beer, if any, was in each can.
With respect to the HGN, defendant argues that it was not *163 reasonably trustworthy because of the water conditions and the circumstances under which it was administered. With respect to the PBT, defendant argues that it was not reasonably trustworthy, because it was not recently calibrated.
The Commonwealth contends, on the contrary, that the facts as presented were entirely sufficient to establish probable cause. Moreover, the Commonwealth asserts that defendant argues for a probable cause standard far more rigorous than established by law. The Commonwealth contends that the probable cause standards are not one of exactitude or that of ruling out all possible explanations. The Commonwealth further alleges that even innocent facts may justify probable cause.
The court will first address defendant’s argument that the PBT results cannot be utilized in the determination of probable cause.
The evidence in support of probable cause need not be admissible at trial. Weaver, 76 A.3d at 567. Moreover, both statutory and case law support the utilization of PBT results in determining probable cause. 75 Pa. C.S.A § 1547 (k); Commonwealth v. Semuta, 902 A.2d 1254, 1260 (Pa. Super. 2006). The only condition of such is that the officer must use a device approved by the department. 75 Pa.C.S.A §1547(k). Defendant has not provided any legal authority which supports his position that in order to be considered for probable cause, the PBT needs to be calibrated. Accordingly, defendant’s claim with respect to this issue shall be denied.
The court will now turn to defendant’s probable cause argument. The court agrees with the Commonwealth’s assertion that defendant misapprehends the probable cause standard. The measure of probable cause is neither one of *164 exactitude nor one where all other possibilities need to be ruled out.
Probable cause exists if the facts and circumstances within the knowledge of the police officer at the time of the arrest are sufficient to justify a person of reasonable caution in believing the suspect has committed or is committing a crime. Commonwealth v. Goldsborough, 31 A.3d 299, 306 (Pa. Super. 2001). The court must view the totality of the circumstances as seen through the eyes of a trained officer, and not as an ordinary citizen would view them. Commonwealth v. Nobalez, 805 A.2d 598, 600 (Pa. Super. 2002). It is only the probability of criminal activity that is the standard of probable cause. Commonwealth v. Thompson, 604 Pa. 198, 985 A.2d 928, 931 (2009). Probable cause exists when criminality is one reasonable inference; it need not be the only inference. Commonwealth v. Smith, 979 A.2d 913, 919 (Pa. Super. 2009), quoting Commonwealth v. El, 933 A.2d 657, 661 (Pa. Super. 2007). It is the facts and circumstances within the personal knowledge of the police officer that frame the determination of the existence of probable cause. Commonwealth v. Lawson, 454 Pa. 23, 27, 309 A.2d 391, 394 (1973); Commonwealth v. Galendez, 27 A.3d 1042, 1046 (Pa. Super. 2011 )(en banc). Finally, and as noted previously, the HGN and PBT results are admissible to support probable cause. 75 Pa.C.S.A. §1547(k)(PBT); Weaver, supra (HGN).
WCO Beers had extensive training and experience in investigating and determining whether individuals operating boats were doing so under the influence of alcohol. He had extensive training as well in administering both HGN and PBT tests in “wet labs” (controlled settings), as well as in the field. Based upon his training *165 and experience, and in spite of whatever limitations may have been present in connection with the HGN and PBT testing procedures in this case, he was of the opinion that they could be relied upon in establishing probable cause.
At the time WCO Beers placed defendant under arrest for suspicion of DUI, he knew the following: defendant was operating a watercraft with at least two minors in a high traffic area with questionable water conditions without the required stem light; defendant had red, bloodshot and glassy eyes; there was an odor of an alcoholic beverage coming from the defendant; defendant admitted that he had drank alcohol one hour previously; there were “more than one” empty beer cans in the boat; there were six clues on the horizontal gaze nystagmus (HGN) test, which in WCO Beers’ training and experience indicated an 80% or better probability that defendant’s BAC was above .08; and the PBT test result of .145 confirmed the presence of an alcoholic beverage.
Clearly, the totality of these factors constituted sufficient probable cause to arrest the defendant for boating under the influence.
ORDER
And now, this day of April 2015 following a hearing and argument, the court grants in part and denies in part defendant’s omnibus pretrial motion. The Commonwealth is precluded from utilizing the HGN and PBT results as evidence during the trial in this matter. Defendant’s motions to preclude the court from considering the HGN and PBT results in connection with the probable cause determination are denied. Finally, the defendant’s motion to suppress based upon WCO Beers allegedly not having sufficient probable cause to arrest the defendant is denied.